343 So.2d 899 (1977)
G.B.B. INVESTMENTS, INC., a Florida Corporation, Appellant,
v.
Ernest HINTERKOPF and Hilda B. Hinterkopf, As Trustees under the Hinterkopf Trust Dated March 14, 1957, Recorded in Official Records Book 128, at Page 120, Public Records of Dade County, Florida, Appellees.
No. 76-1343.
District Court of Appeal of Florida, Third District.
March 1, 1977.
Rehearing Denied April 13, 1977.
Guy B. Bailey, Jr., Batchelor, Brodnax, Guthrie & Primm, Miami, for appellant.
Cypen & Nevins and Stephen H. Cypen, Miami Beach, for appellees.
Before HAVERFIELD and HUBBART, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
HUBBART, Judge.
This is a counterclaim in a mortgage foreclosure suit in which the counterclaimant-mortgagor sought a declaratory decree, injunctive relief and damages against the plaintiff-mortgagee. The trial court dismissed the counterclaim unless the counterclaimant-mortgagor posted either in the registry of the court or through a comparable alternative the amount due on the mortgage plus delinquent interest and taxes. The counterclaimant-mortgagor takes an interlocutory appeal.
The issue presented for review is whether a trial court can condition the hearing of a counterclaim in a mortgage foreclosure suit on the counterclaimant's payment into the registry of the court of the amount due on the mortgage plus delinquent interest and taxes. We hold that the trial court may not make such a pre-condition for access to the courts and that to do so constitutes a violation of the counterclaimant's right to free access to the courts guaranteed by Article I, Section 21, Florida Constitution (1968). Accordingly, we reverse.
*900 On January 10, 1969, the appellant-mortgagor, G.B.B. Investments, Inc. ["G.B.B."] purchased a large tract of land in Dade County, Florida, from the appellee-mortgagee Ernest Hinterkopf and Hilda D. Hinterkopf, as trustees under the Hinterkopf Trust ["Hinterkopfs"]. In payment thereof, G.B.B. gave the Hinterkopfs a promissory note in the amount of $3,280,000 secured by a purchase money mortgage. The note was payable in ten annual installments of $328,000 plus 5 1/2 percent interest beginning January 10, 1970.
The mortgage deed provided that G.B.B. was entitled to release from lien of certain mortgaged parcels of land upon payment of a certain sum per acre. The price paid for each release was to be credited against the next subsequent payment of principal becoming due on the note. The parties subsequently entered into a mortgage modification agreement providing for a different release schedule of properties at a higher release price. G.B.B. also agreed to have a road built onto the property by a date certain or make other arrangements satisfactory to the Hinterkopfs. If this was not accomplished, G.B.B. would be entitled to nor more releases of land.
Several years thereafter, the parties fell into a number of disputes. The Hinterkopfs eventually filed suit to foreclose the mortgage on the ground of waste. They further amended their suit to allege a default on the January 1976 mortgage payment.
G.B.B. answered denying waste and filed an amended counterclaim against the Hinterkopfs for a declaratory decree, injunctive relief and damages. G.B.B. alleged in the counterclaim that it was entitled to a declaration of rights under the mortgage modification agreement. It alleged that the Hinterkopfs have refused to accept release payments when tendered by G.B.B. for particular tracts of land; that a certain sale of land by G.B.B. to a third party has thereby been thwarted; that it was entitled to the release of certain tracts of land upon proper payment as previously tendered; and that the said mortgage modification agreement was in full force and effect even though the road on the property had not been built since satisfactory arrangements had been made with Dade County to build the road in the near future. G.B.B. further sought damages in its counterclaim for interference with contractual relations in that the Hinterkopfs allegedly interfered with and caused the loss of a contract between G.B.B. and a third party on the sale of certain tracts of land which allegedly should have been released by the Hinterkopfs.
The trial court upon motion of the Hinterkopfs entered an order dismissing the G.B.B. counterclaim "unless G.B.B. shall deposit into the registry of this court . . the aggregate sum of $427,547.60." This amount represented the January 1976 mortgage payment plus delinquent interest and real estate taxes allegedly owed by G.B.B. If payment was made after a certain date, the sum required to be deposited would be increased by $197.70 per day. There were alternative provisions in the order for making these payments by setting up a joint bank account and issuing a letter of credit. G.B.B. appeals this order.

I
We are unable to find any authority, and the appellees cite none, which requires a mortgagor in a mortgage foreclosure suit to pay into the registry of the court all mortgage payments plus delinquent interest and taxes as a pre-condition for maintaining a counterclaim against the plaintiff-mortgagee. No Florida statute authorizes it. No Florida case sanctions it. No Florida constitutional provision mandates it.
This lack of authority for such a financial requirement to bringing suit brings the pre-condition into direct collision with G.B.B.'s constitutional right to free access to the courts. Article I, Section 21, Florida Constitution (1968), expressly provides:
"Access to courts.  The courts shall be open to every person for redress of any *901 injury, and justice shall be administered without sale, denial or delay."
This constitutional right has roots deep in Anglo-American legal history dating back to the Magna Charta.[1]Flood v. State ex rel. Homeland Co., 95 Fla. 1003, 117 So. 385 (1928). It first appeared in Florida in the 1838 Florida Constitution and has been retained in every constitutional revision since then.[2] It guarantees to every person the right to free access to the courts on claims of redress of injury free of unreasonable burdens and restrictions. Any restrictions on such access to the courts must be liberally construed in favor of the constitutional right. Lehmann v. Cloniger, 294 So.2d 344 (Fla. 1st DCA 1974).
The courts have generally disapproved financial pre-conditions to bringing claims or asserting defenses in court aside from court related filing fees. A payment to the court clerk to be used in constructing a county law library as a condition for bringing a lawsuit has been declared an undue burden on the right of free access to the courts. Flood v. State ex rel. Homeland Co., 95 Fla. 1003, 117 So. 385 (1928). Requiring a defendant in a criminal case to pay court-appointed counsel fees and certain appellate costs as a condition for being heard on a motion for supersedeas bail following conviction has been struck down on the same ground. Bell v. State, 281 So.2d 361 (Fla. 2d DCA 1973). And requiring payment of a sum of money into the registry of the court unrelated to filing fees as a condition for defending a lawsuit has long been declared constitutionally impermissible. Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897).
The Supreme Court of Florida in Carter v. Sparkman, 335 So.2d 802, 805 (Fla. 1976), recently spoke to the limited nature of the restrictions which can be constitutionally placed on a party's right to free access to the courts. The Court stated:
"Although courts are generally opposed to any burden being placed on the rights of aggrieved persons to enter the courts because of the constitutional guarantee of access, there may be reasonable restrictions prescribed by law. Typical examples are the fixing of a time within which suit must be brought, payment of reasonable cost deposits, pursuit of certain administrative relief such as zoning matters or workmen's compensation claims, or the requirement that newspapers be given the right of retraction before an action for libel may be filed."
One might also mention that by statute a taxpayer must pay all tax assessments which he admits in good faith to be owing before he can bring suit to contest a tax assessment against him claimed to be excessive. Section 194.171(3)(4), Florida Statutes (1975). Millstream Corp. v. Dade County, 340 So.2d 1276 (Fla. 3d DCA 1977), opinion filed January 4, 1977.
Unlike the limited restrictions recognized above, we see no valid or reasonable basis for the financial pre-condition imposed by the trial court herein for G.B.B. to maintain its counterclaim. The payment of the alleged overdue mortgage payment plus delinquent interest and taxes was entirely unnecessary in order for the court to reach the merits of the counterclaim. The payment furthermore had no reasonable relationship to any valid public policy purpose. It accordingly must fall as an unreasonable burden on G.B.B.'s constitutional right to free access to the courts.

II
The appellee Hinterkopfs do not seriously defend the financial pre-condition to *902 the maintenance of the G.B.B. counterclaim.[3] Instead, they seek to avoid the issue by arguing that G.B.B. invited the admitted error by alleging in its counterclaim that it stood ready to make the January 1976 mortgage payment upon order of the court. That is a far cry from asking that its counterclaim be dismissed if it failed to make good on this offer. G.B.B. at no time sought or solicited the order appealed from and indeed vigorously resisted it in argument before the trial court. Moreover, G.B.B. contends that it lacks the financial resources to make the January 1976 mortgage payment because of the Hinterkopfs' interference in its contract with a third party. In no sense, can it be said that G.B.B. invited the error in this case.
The Hinterkopfs further argue that the trial court was right in dismissing the G.B.B. counterclaim but for the wrong reason. The right reason, argue the Hinterkopfs, is that the counterclaim failed to state a cause of action for declaratory relief. This contention, of course, does not touch the G.B.B. counterclaim for damages for interference with contractual relations. In any event, the trial court could not have reached this result because it dismissed the counterclaim by its order only if G.B.B. failed to pay the financial pre-condition stated. If the financial pre-condition had been met by G.B.B., the counterclaim would not be dismissed under the order and would stand as a valid cause of action. Consequently, the stipulated financial pre-condition is an essential part of the order appealed from and the merits thereof cannot be avoided on appeal.
Finally, the Hinterkopfs argue that the record on appeal is insufficient. We disagree. Fla.App. Rule 4.2 d.

III
The order appealed from is reversed and the cause remanded to the trial court for proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] Chapter 29 of the Magna Charta provides in part: "To none will we sell, deny, or delay right or justice." T. Plucknett, A Concise History of the Common Law 24 (5th ed. 1956).
[2] "[W]e declare ... That all courts shall be open, and every person, for an injury done him, in his lands, goods, person, or reputation, shall have remedy by due course of law and right and justice administered, without sale, denial, or delay." Art. I, § 9, Fla. Const. (1838); Art. I, § 9, Fla. Const. (1861). Virtually the same wording is contained in Art. I, § 9, Fla. Const. (1865), and Decl. of Rts., § 4, Fla. Const. (1885).
[3] In the court below, but not in their brief on appeal, the Hinterkopfs argued that the financial pre-condition herein was justified on the authority of Itvenus, Inc. v. Poultry, Inc., 241 So.2d 452 (Fla. 3d DCA 1970). That reliance was misplaced. In Itvenus this court held that a trial court had no authority to excuse a mortgagor from making due and owing mortgage payments. The mortgagor was suing the mortgagee at the time for breach of contract to make certain improvements on the mortgaged property. This court did not hold or suggest that if the mortgagor failed to make his mortgage payments, his lawsuit should be dismissed.